IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| NORTHWESTERN UNIVERSITY, and ) | Trial by Jury Demanded |
| NORTHWESTERN UNIVERSITY BOARD OF ) | |
| TRUSTEES, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, JANE DOE, by her undersigned attorneys, The Law Firm of Tamara N. Holder, LLC, Fish Potter Bolaños, P.C., and Lubin, Austermuehle, P.C., and in support of her Complaint against NORTHWESTERN UNIVERSITY, and NORTHWESTERN UNIVERSITY BOARD OF TRUSTEES (collectively "Northwestern"), states as follows:

**INTRODUCTION**

1. Northwestern University is a prestigious, private institution with an endowment of over 15 billion dollars.[1] To compete for the best students, Northwestern advertises a "committment" to providing students with a safe environment away from home.

2. Northwestern's statements are a farce, and Jane Doe seeks to hold Northwestern University and its Board of Trustees accountable for its systemic institutional misconduct.

3. In July 2022, Plaintiff Jane Doe is an All-American, Northwestern lacrosse player who was sexually assaulted by Northwestern baseball player Chad Readey.

---

[1] A Senate Report found that only 17.2% of for-profit schools' revenue was spent on instruction, less than the amount allocated for marketing, advertising, recruiting, and admissions staffing, and less than the amount generated as profit. For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success (July 30, 2012)

1

4. Northwestern could have prevented Jane Doe's sexual assault but intentionally failed to protect her: Two years prior (August 2020) to her sexual assault (July 2022), at least *seven* current and former classmates of then-incoming freshman-athlete Chad Readey, warned Northwestern (including then-President Morton Schapiro, then-Head Baseball Coach Allen Spencer, and other university officials), that he had a documented history as a serial, sexual abuser towards his female classmates throughout middle school and high school. They warned Northwestern that Readey's unchecked conduct could result in additional harm to female students at Northwestern.

5. Rather than take measures to protect Jane Doe, and other students, from Chad Readey - as obligated by federal law and its own student handbook - Northwestern instead ignored the warnings, and admitted him anyway.

6. Additionally, Northwestern aligned itself with Readey and his parents, sharing the complaints with them, and then admitting Readey to the university to play on its baseball team.

7. Further, Northwestern actively worked to cover-up the allegations, in the event they became public, and even prepared a written statement in defense of its decision to admit Readey.

8. Meanwhile, at the same time, Jane Doe was enrolling in her freshman year Northwestern, as an All-American lacrosse player. She did not know Readey whatsoever, nor did she know about Readey's history as an accused, serial, sexual abuser of his classmates.

9. Upon her enrollment at Northwestern, Jane Doe blindly built a platonic friendship with Readey. Readey sold himself to her as a trusted "brother." Had Jane Doe known about Readey's documented past, she would not have associated with him, let alone hang out with him in a one-on-one setting.

10. Then, on the night of July 18, 2022, Readey sexually assaulted Jane Doe, while she was in town for a lacrosse summer camp with her Northwestern team.

11. In January and February 2023, Jane Doe complained to both Athletic Director Derrick Gragg and Northwestern's Title IX Office. They turned a blind eye.

12. Plaintiff Jane Doe brings this action against Northwestern for negligence, and violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and state law claims.

## PARTIES

13. Plaintiff Jane Doe[2] is a citizen of the State of Florida and student athlete at Northwestern University.

14. Defendant Northwestern University ("Northwestern") is a private university with its principal place of business in Evanston, Illinois. Northwestern is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).

15. Defendant Northwestern University's Board of Trustees ("Board of Trustees") is Northwestern's governing body with its principal place of business in Evanston, Illinois. The Board of Trustees consists of six officers and no more than thirty-six members. At all times relevant, "the President of the University shall be an Ex Officio Trustee entitled to attend all meetings of the Board of Trustees and its Committees." The Board of Trustees "shall establish policies for the governance of the University and shall be responsible for the management of the University in a manner that upholds its mission and assures its continued ability to fulfill such a mission."

## JURISDICTION AND VENUE

16. This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves claims arising under the laws of the United States, namely Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

---

[2] In filing this Complaint, Jane Doe also filed a Motion to Proceed Under Pseudonym in order to protect her identity and privacy as a sexual assault victim, as well as to protect her from future harm.

3

17. In addition to federal question subject matter jurisdiction, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332: (1) Plaintiff is a citizen of the State of Florida, and Defendants are citizens of the State of Illinois; and (2) the amount in controversy exceeds $75,000.

18. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

19. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred within this District.

## FACTUAL ALLEGATIONS

### Chad Readey's Documented History of Habitual, Sexual Misconduct

20. Chad Readey's documented, sexual misconduct towards girls dates back to at least middle school, when he was a student at Parker Junior High School, Flossmoor School District 161, located in Flossmoor, Illinois.

21. In 2016, one of Readey's middle school teachers reported a "major" incident to school administration after she observed Readey "hit" a girl on her buttocks.

22. In response, Readey's mother told his teacher she was "working with Chad on the flirting with girls issue." Composite Exhibit A includes (1) an Affidavit from Readey's middle school teacher, (2) Readey's mother's response to the incident (recognizing since she received "one email and three calls with a short time period, it's probably good to sit down"), (3) and the school's internal incident report.

23. Readey's unwelcome, sexually abusive misconduct towards young women continued into his high school years, when he was a student at Homewood-Flossmoor High School ("HFHS").

4

24. In high school, Readey was the subject of multiple, student complaints of sexual misconduct. During his sophomore year (2018-2019), Readey grabbed a female student's breast on a school bus, after she told him to stop touching her.

25. In January 2020, during his junior year, Readey admitted to Homewood-Flossmoor officials in writing that he did, in fact, grab the female student's breast.

26. Prior to the incident on the school bus, Readey engaged in habitual, sexual harassment and unwelcome touching of this same female student, often times in an open classroom setting. For example, he asked if he could "finger" her; he regularly touched her inappropriately; he unzipped her hoodie to see if she was wearing anything underneath; and he told when he has sex with girls, he "prefers them to be quiet, to take it, and not to moan or make other noise." When Readey engaged in this conduct towards the then-15-year-old student, she would tell him to stop or show her disapproval.

27. Eventually, HFHS "investigated" complaints about Readey from other students. Even though Readey admitted, in writing, to grabbing the female student's breast, and other unwelcome conduct, HFHS did nothing but engage in "Restorative Conversation" with Readey. Exhibit B is HFHS's log entry related to the investigation.[3]

## Northwestern Receives Multiple Warnings About Readey's History of Sexual Misconduct

28. On or around August 2020, Readey posted on social media that he had committed to attend Northwestern, and would be joining the baseball team, beginning in Fall 2021.

29. ***Following his announcement, Readey's HFHS classmates immediately contacted Northwestern's then-President Morton Schapiro, then-Head Baseball Coach Spencer Allen, and***

---

[3] HFHS has a history of ignoring student complaints, including complaints about sexual misconduct and harassment. In March 2022, hundreds of students staged at least two walkouts "due to concerns over alleged sexual assault and harassment between students," and were "fed up with how HFHS [was] handling allegations of sexual assault and harassment. Fox 32 Digital Staff, Hundreds of Homewood-Flossmoor students stage walkout over alleged sexual assault, harassment claims, Fox 32 Chicago, (March 16, 2022); and, Shanzeh Ahmad, Homewood-Flossmoor students to hold second walkout over alleged sexual assault, harassment between students, Chicago Tribune, (March 19, 2022)

*other school officials, warning the administration that Readey had a documented, unchecked history of unwanted sexual misconduct in both middle school and high school.*

30. On August 17, 2020, Classmate Liz Carrick emailed Coach Allen, stating in part:

> Hi! You recently admitted Chad Readey, a student from Homewood-Flossmoor to pursue his academic college career at Northwestern. I would like to bring to your attention that this student has sexually assaulted multiple women during his middle school and high school career. *I experienced this first hand when I was 12 years old, but never reported it because I was unaware of what sexual assault even was at the time.* Last school year, over six girls went to the school administration, SEPARATELY, to report their own sexual assault experiences against Chad. He admitted to everything, but did not receive any repercussions…I just wanted to inform you of these incidents, and help you become aware of the type of student athlete that you are admitting into your school. (Exhibit C)

31. On August 17, 2020, Classmate Victoria Olaleye emailed President Schapiro and Coach Allen, stating in part:

> …as someone who has gone to school with him for seven years now, *I don't think that this is the smartest nor safest decision you all can make. Chad Readey has a horrible and long record of sexually harassing and sexually abusing girls.* The list of names unfortunately is very long. And this has happened since we were younger. He has never been penalized for it even though it has been brought to Homewood-Flossmoor High School's attention (you can ask the school for more information). As a result, many girls at our school, girls that I'm friends with or have spoken to have been let down and *walk around in antagonizing fear.* I know that your school prides yourself on its student life and safety of your students. *I am sorry to say that if you let him on to campus or the field, many more lives can be fatally affected*… (*See* Exhibit C)

32. On August 17, 2020, Classmate Kai Offett emailed six (6) different Northwestern officials about Readey's "alarming sexual assault allegations," stating in part:

> I was recently made aware of a new student/baseball recruit for Northwestern University named Chad Readey that currently is a senior at Homewood Flossmoor High School. I was immediately alarmed at this announcement, as this student

6

has multiple alarming sexual assault allegations. Northwestern University is an extremely prestigious institution, and I'm sure that as such you would not want an incoming student with such allegations, nevertheless those allegations being confirmed on multiple occasions…He has multiple allegations of sexual assault from middle school throughout his high school career…There have been 7 more who have reported their instances of being assaulted to Homewood Flossmoor Administration, in each of which no action has been taken on behalf of Homewood Flossmoor's baseball team or the institution itself. ***I am emailing to ask that you seriously reconsider and immediately rescind your offer to Chad Readey as a baseball commit and as a student. Sexual Assault victims deserve to be believed and I genuinely believe that this student is a threat to other incoming students at your university***. (*See* Exhibit C)

33. On August 17, 2020, Camille Willis messaged Northwestern, stating:

    I go to school with Chad and have gone to school with Chad since seventh grade. In the time I've known him I've talked to several girls who tell similar stories of being sexually assaulted by him. ***We've gone to our school administrators but he's never gotten more than a slap on the wrist. I just wanted to make sure you all were aware of the type of person you're admitting.*** (*See* Exhibit C)

34. On August 17, 2020, Keeley Stanciel and Matthew Hommer individually sent this

message to the "Undergraduate Admissions" email address, stating:

    …I feel as if I should bring it to your attention that [Chad Readey] has had multiple sexual assault allegations against him. Close friends of mine have reported abuse dating back to junior high…Since then six more girls have separately come forward to Homewood-Flossmoor's administration about Chad sexually assaulting them. ***The administration brushed each of these allegations under the rug despite Chad admitting to his actions***. I am certain that this is not the kind of student or athlete you want representing your school. (*See* Exhibit C)

35. On August 19, 2020, the @NuPredators Twitter account – a social media outlet

devoted to addressing "rape, assault, trauma, sexual violence" at Northwestern – received a post that

"over 6 girls" went to high school administration "to report their own sexual assault experiences" against Readey. Northwestern was aware of this posting.

36. On August 19, 2020, then-Assistant Director of Undergraduate Admissions Mauricio Gonzalez emailed Director of Undergraduate Admissions Dr. Liz Kinsley, and Senior Associate Director of Admission & Director of Communication and Audience Engagement Andrew Linnehan, stating he received private messages on Northwestern's Instagram and Facebook accounts with allegations about Readey. He further stated:

> ...*I have not told anyone else besides you both of these messages, and I have not responded to these messages either*...These allegations are very serious, and I wanted to bring this to your attention as soon as I could... (Exhibit D)

37. Indeed, Northwestern disregarded the warnings, did not warn other students about them, and then welcomed Readey into the Northwestern community.

38. Additionally, Northwestern top brass actively engaged in an effort to protect itself and Chad Readey from any negative publicity, should it arise.

39. On November 7, 2020, Northwestern Vice President for Global Marketing and Communications John Yates, along with other Northwestern officials, drafted a statement to release if the public became aware of the university admitting Readey despite its knowledge of his documented history of sexual misconduct in middle school and high school.

40. Northwestern also actively worked with the Readey family, in an effort to protect him, too: Northwestern shared the messages with the Readey family, who, in turn, used the identities of the concerned students to threaten, intimidate, and ultimately sue several of those students.

## Northwestern's Intentional Failure to Protect Jane Doe

41. Jane Doe was raised in Florida, where she was an All-American lacrosse player.

8

42. Northwestern recruited Jane Doe to play on its lacrosse team, using false and misleading representations, namely, that its athletic department was inclusive and safe, and that she would be protected by the institution if she attended the university.

43. For example, during Jane Doe's recruiting trips, in September 2019, and again in July 2021, Northwestern officials gave Jane Doe and her family a tour of the school and athletic facilities and told her, among other things, that she would be safe at the school.

44. Believing that she was attending a safe institution, Jane Doe chose to attend Northwestern, as an All-American lacrosse player, in Fall 2021. She felt proud, honored, valued, and protected.

45. Upon enrolling at Northwestern, Jane Doe relied on Northwestern's student handbook that stated, in part:

> Northwestern is committed to fostering an environment in which all members of our community are safe, secure, and free from prohibited harassment, discrimination and sexual misconduct in any form. When learning of conduct or behavior that may not meet these standards, community members and the University are expected to take an active role in upholding this policy and promoting the dignity of all individuals.

46. Jane Doe also relied on communications from the Athletic Department. For example, on October 20, 2021, Athletic Director Derrick Gragg sent an email to the student-athlete community, stating in part:

> ...Northwestern Athletics & Recreation is built upon a foundation intent on making every Wildcat feel safe, supported and capable of pursuing their goals...

47. Jane Doe enjoyed her freshman year academically, athletically, and socially. Early on, she and Readey quickly became friends and she found him to be simpatico, as a fellow Black athlete in a predominantly white school. Their relationship was platonic. Jane Doe was not sexually attracted to Readey in any way, whatsoever.

9

48. In June 2022, Northwestern hired Jim Foster as its new baseball head coach, including to lead an example for Readey.

49. On July 18, 2022, Jane Doe returned to Northwestern for a lacrosse summer camp, and staying at a home rented by members of the lacrosse team.

50. Desiring to stay home for the night, she invited Readey over to watch a movie. Jane Doe gave Readey no indication that she was interested in him sexually. Readey knew that Jane Doe had a girlfriend.

51. Within minutes of starting the movie, Readey began to touch, then kiss Jane Doe's body. She rejected his advances, but he continued. He took off her pants and underwear against her will and put his mouth on her vagina. He tried to put his penis in her vagina, then he forced her to touch his penis. He ejaculated on her body, went to the bathroom to clean up, and left.

52. During her sexual assault, Jane Doe repeatedly told Readey to stop but he refused.

53. Following Jane Doe's sexual assault, Readey began to stalk her at parties at the lacrosse house. Readey came to the house, even after Jane Doe instructed him to stay away. He also refused to leave the premises on multiple occasions, despite being asked to leave by Jane Doe and her teammates.

54. Following her sexual assault, Jane Doe became depressed and withdrawn. She became afraid, in an environment where she previously felt safe. She struggled with attending classes, and her grades declined. She lost her desire to play lacrosse, a sport she played for her entire life.

## Jane Doe Reports Her Sexual Assault to Northwestern Athletics and Title IX

55. On or about January 10, 2023, Jane Doe reported the sexual assault to the Director of Athletics Derrick Gragg ("Gragg"). She told Director Gragg, among other things, that she was "a direct victim of Chad Readey's disgusting behavior." She expressly asked for help from the leader of the Northwestern athletic community. "I am asking the athletic administration to uphold and exercise those values Northwestern Athletics is associated with," she stated.

56. After failing to respond, Jane Doe emailed Gragg again.

57. Finally, on January 26, 2023, Gragg replied. He stated, in part:

> First, let me sincerely apologize for the time it has taken me to respond. As you hypothesized, I did not see your email from January 10th...once again, I thank you for your outreach and for bringing this matter to our attention. We are committed to maintaining an environment in which community members feel safe, welcomed, and affirmed.

58. On February 1, 2023, Jane Doe reported her sexual assault to the Title IX office, without any assistance of, or support from, the Athletic Department.

59. According to Northwestern's Interim Title IX Policy on Sexual Harassment:

> At any time after receiving a report of Title IX sexual harassment, the university may remove a student respondent from the university's education programs and activities on an emergency basis if an individualized safety and risk analysis determines that an immediate threat to physical health or safety of any student or other individual arising from the allegations of Title IX Sexual Harassment justifies removal.

60. Northwestern's Policy on Institutional Equity has the same abovementioned statement.

61. And yet, despite now having yet another complaint about Chad Readey, this time from a Northwestern student, Northwestern did absolutely nothing to determine if Readey was "an immediate threat to physical health or safety of any student." Just as it had with Readey's former classmates' complaints, Northwestern ignored Jane Doe's report as well.

62. According to Northwestern's Comprehensive Policy on Sexual Misconduct, it "prohibits all forms of sexual misconduct" including:

> "Sexual penetration without consent: Any penetration of the sex organs or anus of another person when consent is not present; any penetration of the mouth of another person with a sex organ when consent is not present; or performing oral sex on another person when consent is not present. This includes penetration or intrusion, however slight, of the sex

11

organs or anus of another person by an object or any part of the body."

63. Finally, in May 2023, Jane Doe filed a formal complaint with Northwestern. She has dropped out of lacrosse, depriving her of the opportunity to participate in the school's historical national championship win.

64. In July 2023, Northwestern fired Head Baseball Coach Jim Foster, following reports that he made inappropriate comments about a female staff member, was being investigated by human sources, and had engaged in other "bullying and abusive behavior."[4]

65. Chad Readey is still enrolled at Northwestern, and an active member of its baseball team.

66. Derrick Gragg is also still at Northwestern, as the Vice President for Athletics and Recreation. He, too, has faced demands that he resign from his post.[5] His 2015 book called women 'Man's Greatest Distraction,'[6] and referenced videos of women as "booty-shaking sex-kittens."[7]

67. In an effort to influence public opinion, following the firing of Coach Foster, Northwestern - via Gragg - issued a public statement to media, falsely stating:

> ***Nothing will ever be more important to Northwestern than providing its students a place that allows them to develop in the classroom, in the community, and in competition at the absolute highest level, and building a culture which allows our staff to thrive.***

---

[4] Jonathan Bullington, Northwestern dismisses Jim Foster as head baseball coach amid controversy, Chicago Tribune, (July 13, 2023)
[5] Ignacia Dowling, Op-Ed: Derrick Gragg needs to speak to the Northwestern community, or step away from it for good, insidenu.com, (July 11, 2023); and, Steve Greenberg, On list of Northwestern questions still unanswered: Where is AD Derrick Gragg's leadership?, Chicago Sun Times, (July 15, 2023)
[6] Nick Selbe, Northwestern AD Faces Criticism for 2015 Book Calling Women 'Man's Greatest Distraction,' SI.com, (July 25, 2023)
[7] Angie Leventis Lourgos, Northwestern AD Derrick Gragg, under scrutiny for hazing scandal, offers questionable advice about women — 'man's greatest distraction' — in book, Chicago Tribune, (July 25, 2023)

## COUNT I
### Violation of Title IX, 20 U.S.C. § 1681, et seq.
### Deliberate Indifference
### (Defendants Northwestern University and Board of Trustees)

68. Plaintiff incorporates all prior allegations as if fully stated herein.

69. At all relevant times, Defendants Northwestern University and Board of Trustees were federal fund recipients within the meaning of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a), *et seq.*

70. Defendants Northwestern University and Board of Trustees owed a duty to Plaintiff to provide and ensure an education environment free of sex discrimination and sexual harassment, and to enforce the regulations, rules, and laws necessary to protect Plaintiff from acts of sex discrimination and sexual harassment.

71. Plaintiff, a Northwestern student, was sexually assaulted by Chad Readey, also a Northwestern student, on or about July 18, 2022.

72. Defendants had actual notice that there was a substantial risk that Readey would sexually assault female students no later than on or around August 17, 2020, when it received credible reports that Readey had a documented history of engaging in repeated sexually assaults of numerous female students in high school and grade school.

73. Defendants were deliberately indifferent to the actual notice that Readey had repeatedly sexually assaulted female students over the course of several years in the educational setting and the substantial risk that he would similarly sexually assault other female college students.

74. Through its acts and omissions, Defendants acted with deliberate indifference to the actual notice it received concerning Readey by, among other things:

    a. Failing to protect Ms. Doe from Chad Readey;

    b. Failing to take meaningful measures to prevent Chad Readey from sexually assaulting female students;

13

      c. Failing to investigate Chad Readey; and,

      d. Failing to conduct a Title IX investigation of Chad Readey.

75. Defendants' response to the actual notice it received concerning Readey was clearly unreasonable in light of the known circumstances.

76. As a direct and proximate result of Defendants' action, inaction, and deliberate indifference, Plaintiff Jane Doe was sexually assaulted and raped by Readey.

77. The sexual assault suffered by Plaintiff Jane Doe was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

78. By its action and inactions, Northwestern University acted with deliberate indifference toward the right of Plaintiff to a safe and secure education environment, thus materially impairing Plaintiff's ability to pursue her education at Northwestern in violation of the requirements of Title IX.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorneys' fees and costs, punitive damages, and any other relief that this Court deems appropriate.

**COUNT II**
**Violation of Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1 et seq. -- Deception**
**(Defendants Northwestern University and Board of Trustees)**

79. Plaintiff incorporates all prior allegations as if fully stated herein.

80. Defendants Northwestern and Northwestern's Board of Trustees made numerous oral and written material misrepresentations to Jane Doe, in an effort to deceive her into trusting Northwestern was a safe educational institution free from sexual harassment, and ultimately choosing to attend Northwestern, pay its tuition and play on its lacrosse team. These misrepresentations included as alleged in paragraph 45 above in the student handbook that Northwestern was contractually obligated to provide a safe environment free of harassment and discrimination.

Defendants also omitted to disclose to Plaintiff and other students that Northwestern had admitted Readey without an adequate investigation and without taking measures to protect Plaintiff and other students from Readey as contractually obligated in the student handbook.

81. Northwestern made these false statements and omissions knowing they were not true as it has admitted Readey having been warned he was a sexual predator. It thus engaged in a mass breach of its own student handbook and the contractual promise to its students to maintain a safe environment free of discrimination and harassment.

82. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS § 505/2, provides in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce and hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

83. Section 10a of the Consumer Fraud Act, 815 ILCS § 505/10a further provides:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper.

84. The misconduct alleged occurred in the conduct of trade or commerce within the meaning of Section 1(f) of the Consumer Fraud Act because it occurred in the advertising, offering for sale of services by Northwestern in making misrepresentations and omissions of material fact as alleged herein including in its student handbook to induce students to attend and pay tuition.

85. Plaintiff is a person within the meaning of Section 1(c) of the Consumer Fraud Act because she is a consumer within the meaning of Section 1(e) of the Consumer Fraud Act, because she purchased education services from Northwestern.

86. Defendants' misrepresentations and omission of material fact as to Readey and its policies and procedures for maintaining a safe environment as alleged in paragraph 45 and in this Count were material to Plaintiff's decision to attend Northwestern and pay tuition. She would never have attended Northwestern if she had known that it had engaged in the misconduct in allowing Readey to attend and had taken no adequate measures to warn and protect her and other female students as obligated by the student handbook and its other representations to her during the recruitment process.

87. As a direct and proximate result of Defendants' misrepresentations and omissions, as alleged above, Plaintiffs suffered damages in paying tuition and the injuries and stress from a sexual assault and battery.

88. Defendants' material misrepresentations and omissions alleged herein were willful and wanton thus allowing for a punitive damage award.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorneys' fees and costs, punitive damages, and any other relief that this Court deems appropriate.

## COUNT III
**Illinois Consumer Fraud and Deceptive Business Practices Act
815 ILCS 505/1 et seq. – Unfair Practice
(Defendants Northwestern University and Board of Trustees)**

89. Plaintiff incorporates all prior allegations as if fully stated herein.

90. Northwestern's conduct in systematically refusing to provide a safe environment as contractually obligated in its student handbook is a mass breach of contract, as to all its students, including Plaintiff.

91. Northwestern's systematic violations of its own policies and procedures and the representations in its student handbook as alleged in paragraph 45, violates federal and state public policy, including Title IX, requiring Northwestern protect its students and to provide a safe, discrimination and harassment free environment.

92. It was also immoral, unethical, oppressive and unscrupulous for Northwestern to breach the promise in its handbook and allow Readey to enroll and/or to allow Readey to enroll without taking adequate precautionary measures to protect Plaintiff and other students.

93. As a direct and proximate result of Defendants' unfair conduct, as alleged above, Plaintiff suffered damages in paying tuition and injuries and stress from a sexual assault and battery.

94. Defendants' unfair practices and mass breach of contract alleged herein were willful and wanton thus allowing for a punitive damage award.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorneys' fees and costs, punitive damages, and any other relief that this Court deems appropriate.

## COUNT IV
### Negligence
**(Defendants Northwestern University and Board of Trustees)**

95. Plaintiff incorporates all prior allegations as if fully stated herein.

96. Defendants Northwestern University and the Board of Trustees had a duty to discipline, supervise, and protect the physical safety of its student athletes.

97. Defendants breached their duty to Plaintiff Jane Doe, in one or more of the following ways:

   a. Defendants knew or should have known that, by allowing Chad Readey to attend Northwestern, acts of sexual assault and/or sexual battery against female Northwestern students could occur;

  b. Defendants knew or should have known that Chad Readey had perpetrated previous acts of sexual assault against female classmates, and that by failing to supervise and/or discipline him, such acts would continue to occur;

  c. Defendants knew or should have known that their failure to properly supervise and/or discipline Readey posed a high probability of harm to female students, including Plaintiff Jane Doe;

  d. Defendants acted with reckless indifference or conscious disregard to the credible reports and evidence it received regarding Readey's history of committing sexual assault against female classmates;

  e. Defendants recklessly or consciously disregarded the substantial risks posed by not properly supervising and/or disciplining Readey; and,

  f. Defendants were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff Jane Doe.

98. Defendants' actions and omissions constitute willful and wanton misconduct.

99. As a direct and proximate result of these willful and wanton acts and/or omissions, Plaintiff Jane Doe suffered a sexual assault and rape that caused severe emotional distress.

WHEREFORE, Plaintiff seeks entry of judgment on her behalf and against Defendants Northwestern University and Northwestern University's Board of Trustees for all damages and relief allowed by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 9, 2023            Respectfully submitted,

                             **PLAINTIFF JANE DOE**

                             _____
                             Tamara Holder
                             One of Plaintiff's Attorneys

| | |
|---|---|
| Tamara Holder<br>The Law Firm of Tamara N. Holder, LLC<br>917 W. Washington Blvd., Suite 222<br>Chicago, IL 60607<br>312-440-9000<br>tamara@tamaraholder.com | David Fish<br>Martin Stainthorp<br>Fish Potter Bolaños, P.C.<br>111 East Wacker Dr. Suite 2300<br>Chicago IL 60606<br>dfish@fishlawfirm.com<br>mstainthorp@fishlawfirm.com |
| Peter S. Lubin<br>Patrick D. Austermuehle<br>Lubin Austermuehle, P.C.<br>17W220 22nd Street, Suite 410<br>Oakbrook Terrace, IL<br>630-333-0333<br>Peter@l-a.law.com<br>patrick@l-a.law.com | Terrence Buehler<br>Susan J. Irion<br>LAW OFFICES OF TERRENCE BUEHLER<br>19 South LaSalle, Suite 702<br>Chicago, IL. 60603<br>(312) 371-4385<br>tbuehler@tbuehlerlaw.com<br>irion@susanirion.com |